Okay we're calling our next case Oakwood Laboratories v. Thanoo et al. Mr. Barry for Oakwood. Yes sir. You may proceed. Thank you your honor I'd like to reserve three minutes for rebuttal. Done. Okay may please the court Michael Barry for the appellate. The issue here is whether Oakwood pled a plausible claim for relief upon which relief can be granted and we submit to the court that it has. From 1997 through today, 23 years, Oakwood has researched and developed the use of microspheres for the delivery of release of pharmaceuticals into the human body. Microspheres are particles substantially smaller than a millimeter. Microsphere pharmaceuticals deliver medicines by using microspheres that are injected into a person, they travel throughout the body, and they time their release over a sustained period of time. This science and the research and development of safe and predictable microspheres pharmaceuticals is so extraordinarily difficult that the science requires many years of trial and error. It requires extensive clinical studies over a long period of time. Sure yeah and you you briefed that very carefully the cost, the time, those sorts of things. I'd like to take you, if I could, to a specific portion of our, am I saying it name right, Aurobindo? Aurobindo, correct. Aurobindo. If if we look on their answering brief at page 23, they say in any event Oakwood's theory of misappropriation is clarified on appeal. It's not that its secrets were improperly acquired. It's that Dr. Thanew, and I might, I'll stop again, interrupt myself, am I saying his name right? Is it Thanew? Dr. Thanew. Thanew. It's that Dr. Thanew and Aurobindo are improperly using those secrets to develop products for Aurobindo. So my question to you is, have they accurately described your position that you're not, you're not taking the position that these things were improperly acquired, these secrets? That's not accurate. I'll tell you why. So then explain what the wrongful acquisition step was. Sure. There are two here, right? So you have the first wrongful acquisition, which is the parties, this is Oakwood and Aurobindo, enter into a confidentiality agreement about a business venture. And they exchange confidential information in furtherance of that business venture, not in furtherance of what Aurobindo wants to do in the future. So there was a wrongful acquisition at that point because they were taking it for a different purpose than what was intended on the party's confidentiality agreement. And if we were reading into, if we were to have a holding that says that that's okay, that means everybody who enters into a confidentiality agreement for a business venture doesn't get protection if the venture doesn't take off. And then they go later on the other side who gets the information and goes and competes with the information they illicitly used, and they acquired beyond the scope of what was intended. Do you do assert that Dr. Thanu acquired the information in a wrongful fashion or just that Aurobindo did? So Aurobindo acquired it in a wrongful fashion. Dr. Thanu had a rightful ability to have that information when he was a loyal employee of the company. But once he left, he was not able to disclose it to third parties. So when Dr. Thanu went to work for Aurobindo, and he then used that information in furtherance of Aurobindo's business and not in furtherance of the business of Oakwood, well, that was an improper use. And Aurobindo... Well, that's an inference that you want us to draw from the complaint here. But your misappropriation theory, at least, as you've asserted it, requires only showing that there's a factual pathway for a defendant's use. Correct. Is that really enough, mere access to the information, that there's now an employee who knew it and is in a position to use it? That's enough to establish misappropriation? No, I mean, so misappropriation is obviously a six-pronged test, right? You need a trade secret, you need efforts to keep it secret, and there must be information to the employee. Those three are not up for any issue on this appeal. The remaining three are, right? Disclosure by that employee in breach of the confidence, the secret information was acquired by a competitor with knowledge of the employee's breach of confidence, and the secret information was used by the competitor to the detriment of the plaintiff. What was that pled? Where were those issues pled? Those were pled in the complaints. I could take you through that paragraph by paragraph. The complaint is at A204 in the record. Right. So here we go. What do we have here? Prior to hiring Dr. Thuneau, Arabindo had zero experience in Microsphere Pharmaceuticals. Paragraphs 47, 48. I get all that, but where is the plea that was used? Well, that's the inference, right? That's the inference. That's the issue we have. Because what we have here is you have Arabindo that had zero experience in this field. In 2013, they signed confidentiality agreements. Arabindo obtains confidential information from Oakwood about its Microsphere project. Arabindo then says, I'm going to try to hire Dr. Thuneau away. They successfully do that. Arabindo calls off abruptly the discussions for the joint venture. And then Dr. Thuneau lies to Oakwood, tells him he's going to go into an area of science and pharmaceutical technology that did not involve Microsphere systems technology. So you could take that inference of the allegation of the lie to mean he was doing something improper. And now when Arabindo never conducted Microsphere research before, it's now doing it at the same facility that Dr. Thuneau works. And Dr. Thuneau is responsible for hiring all personnel for Microsphere related work at Arabindo. And within two years, two years of hiring Dr. Thuneau, Arabindo announces in an investor call that it is in development in advanced stages of four Microsphere products, two of which were from Oakwood. And in other words, within two years of hiring Dr. Thuneau, Arabindo was able to announce that it did what it took Oakwood 20 years to do, $130 million to do, and 20 to 40 full-time employees to do it. And this is something we alleged. So Mr. Berry, Mr. Berry, yeah, you have made that argument very strongly in your in your papers. Coming back on that point about you stole our trade secrets, the response from the Applees, as I understand it, it's been you've been all over the map on what this trade secret is, like, is it, you know, first, it was, I'm not even gonna try to pronounce these things, Leupolide, yeah, Octotride, Risperidone, you know, that it was, I lied, I did try. But, but you're, you're all over the map. And, and they don't, you know, it's not fair to them. This is something that was debated heavily during the ramp up to the passage of the Defend Trade Secrets Act, that, that this ought not be a cause of action, which just allows an unhappy competitor to, to wade through its opposing parties, its own business secrets and technical secrets, on the basis of an assertion that you stole my, quote, secret without identifying with specificity what the so have we come to rest? Do we have an agreement and understanding? Is the court approved some statement about what is the trade secrets that we're talking about here? It has, Your Honor. And in the last opinion, it had said that we had met the burden of the trade secret. This is the first time I've done a trade secret case where the trade secrets were actually disclosed at the pleading stage under sealed complaints. Usually you file the complaints, you get to the next stage before discovery starts. You, you, you exchange the trade secret information. But we identified the trade secret in the, in one of our complaints. It was sealed. I think a motion to seal is still pending before the Third Circuit on that. We certainly don't want that information out there for the public. But at the end of the day, the district court found that Oak Wood does have protectable trade secret interests in what it had filed. And with  And they looked at one pharmaceutical over another pharmaceutical. But I think when you look at microspheres, you got to look at it like a bus in a city, right? People get on the bus, the bus goes forward, and it disperses those people throughout the city, right? And the people on the bus could be a metaphor for the pharmaceutical that's injected into the microsphere, right? We're talking about the transport system here, we're talking about the bus. So whether it's loop relied a peptide, this tide or that tide, it's all about the be in the time of release, which took my client 20 years to do. And so when you look at this, knowing that there's a trade secret, because the district court already said, we've got a trade secret. Now, what, what do we have here, we have all of this smoke, with probably a little bit of fire that gets us past the door on the low bar threshold of a pleading standard. That's all we're trying to do is get into discovery. But how the common sense dictates that it takes me 20 years to do. Yeah, and your and your assertion is, they had nothing before Dr. Thuneau, within a relatively short time after Dr. Thuneau, they're announcing microsphere products. But that's, is that the whole of it? Is that I mean, do you have your, your assertion of use depends on the inference, that that just, that's the logical inference, that's the best logical inference or no, there, there are, there certainly are a few more inferences. Number one, he lied about telling us where he was going and what he would do. Why would somebody lie about that the inferences he was going to do something improper? Second, he was responsible at Aurobindo for R&D injectables. If you look at his LinkedIn page, which we attached to our complaint, his job at Aurobindo was to in fact, yeah, well, we read it, it's microsphere. He said on LinkedIn, he's doing microsphere. And he was hiring all personnel related to microsphere technology and building that technology. And I think even more compelling than than that is, yeah, the two years that transpired over our 20, 10% of the time you're talking about to what, what we had done at, at Oakwood. And then you look at that, and you look at the fact that they're doing that microsphere research at the same exact facility that Dr. Thuneau was working at in Dayton, New Jersey, judge, we get to the point where, and they built that facility and a team around him. Those are all inferences that would lead somebody at a pleading stage to say, yeah, there is a lot of smoke here that gets you past the threshold. If I look at these facts, and allegations, and the reasonable inferences I can draw, we get to discovery. Okay. Gotcha. You're, you're, you're at your mark. Let me ask Judge Crouse or Judge Restrepo, if they've got any questions they want to ask before we turn to Mr. Janna. Okay, if you could any, pleading requirement as to damages. Sure. That's a very good point. So, so, yeah, there, there, there are two issues on damages, Judge Crouse. The first, the first issue is, number one, you got to remember, this is, we were seeking injunctive relief. So injunctive relief requires irreparable harm, not necessarily showing damages at the point of just irreparable harm, that you will be damaged. But number two, we've pled in the complaint, and we pled in the complaint at paragraph, at paragraph 87 and 88, that Oakwood is nevertheless still suffering damages, because the defendant's public announcement that it has what we have, significantly reduces our ability to partner with other companies, raise financing, develop, to develop our own products, or, or derivative products from, from investors and folks who will now deem our competitive advantage materially diminished as a result of the announcement. That being said, again, we we can avert damages here pretty generally, which we have in the complaint, but to the extent that's an issue, that's at paragraph 88 and 87 of the complaint at A204 in the record. Okay. Thanks very much, Mr. Berry. Mr. Janow, the floor is yours, sir. Thank you. Good afternoon. And may it please the court, Jonathan Janow on behalf of the Appalese, Dr. Thanew, and the Orobindo parties. This case turns on two directly linked pleading failures. The first is the lack of a specified use of an identified trade secret. And the second is the articulated harm that's linked to that usage that would permit relief. Well, let's, let's, let's start with use. We've just heard from Mr. Berry, and we've read his papers on behalf of his client. And there, you know, I will not do the justice, but I understand to be saying, obviously, they're using it because nobody goes from zero to 60 in a nanosecond the way these people did in a highly complex area. And they did it clearly on the back of the trade secrets that walked out the door with Dr. Thanew. Why, why isn't there a reasonable inference, even if you're ultimately able to fight back effectively at summary judgment or trial stage, why isn't there a reasonable inference that if somebody's got nothing, and five minutes later, they got something that, hey, they got that something because the person who had it gave it to them, Dr. Thanew had it, and he gave it to them? Well, Your Honor, I think there are there are two, there are several pieces to that answer. So first is a bit of contest. The microsphere technology at issue is not something that is Oakwood's alone. And as Oakwood has alleged, it has not launched any microsphere product of its own. Microsphere technology is something that is, as Oakwood acknowledges in its briefings, utilized by other manufacturers. And if Orobindo were to... Understood, understood. And I'm not I'm not trying to get you to say that they're right and everything they said, I'm only trying to get you to respond to what I understand their key point to be in which you've hit in your briefing. You say they haven't said anything about use. I hear them saying in front of us and read it in their briefs. They had nothing before, nothing in microsphere technology. Dr. Thanew left us. He was our head guy on it. And within two years, they were able to say we've got four products coming to market. They could not have done that without using, not just having, but using our trade secrets. Now, respond to that. Why is that not a fair inference? This goes to the Oakwood allegation of a truncated timeline. And I think the relevant complaint here is a third amended complaint, which was filed in 2019 and shows that, in fact, the idea of a truncated timeline doesn't really hold up to the facts as alleged. The mere announcement of the development of some product in 2015 was then followed up by later announcements of delays and still trying to develop some kind of a product. So the idea that it's still very much, still very much fast tracked, very much fast tracked, as opposed to what Oakwood had to go through. Well, the allegation certainly is that Oro Bindo is developing its product in a fast track. But we would submit respectfully, Your Honor, that if you're looking at the 2019 third amended complaint and there is no allegation of any approval of a product, any imminent launch of a product. Why is imminent approval of a product relevant, Mr. Chenow? The question isn't whether you're ready to go to market. The question is whether you're using their trade secrets. They say the proof that you're using their trade secrets is you're telling the investing public you have made a substantial progress on this and you're about to do some great things with it. And they just say that's impossible without having stolen and used our trade secrets. So that's the, I mean, it sounds like what you're arguing is, wait, there really, you can't, there's another reasonable explanation. But is that the standard we're supposed to apply here? Isn't the standard supposed to be every reasonable inference in their favor? That is the standard, Your Honor. But we think it's helpful to look at this question through the lens of harm and how the allegations of use would make a showing of harm that would be support and entitlement to relief now. If you accept their premise, you want to talk about harm? Well, sorry. I mean, if you accept their premise, they've been harmed. You just heard him. They've been harmed. We're just reading the complaint and giving them the benefit of the doubt, so to speak right now. They've been harmed. The allegation of harm is in the complaint is limited essentially to this fair one sentence allegation of economic harm in the form of alleged loss of investor interest in some way. But when pressed by the district court on this question, Oakwood was unable to provide any sort of meat as to specific investors that lost interest, specific business partnerships that were lost. And so at this stage and maybe so maybe a summary judgment. We're talking about a motion to dismiss here. The standard of proof is plausibility. Why isn't it at least plausible that having lost a significant competitive edge, they would lose investment interest? Why isn't that at least plausible? Well, we would submit, Your Honor, that they have to allege some facts that would make it plausible to show that they have, in fact, lost some investor interest and that that they would have some economic harm that's quantifiable. And there's there is no allegation that would. How is that consistent counsel with the Defense of Trade Secrets Act provides a remedy where there is either actual or even threatened use or disclosure that that's that that's correct. And it's important to note that that language of threatened disclosure is in is in a provision relating to injunctive relief that does not find itself in the in the provision relating to damages. And so one could envision a scenario. They've asked for injunctive relief. Well, Your Honor, certainly they have pivoted to the claim of injunctive relief on appeal, something that they had not fled with any specificity in their complaint or pursued in district court. But the key question and I think what is clarifying here is, and which helps clarify the lack of allegations of use is to understand what what are they asking that would be enjoined? What is the specific circumscribed relief that they would be asking to be enjoined? And it can't be just about how about enjoying about enjoining you from using their trade secrets, Mr. Janna. How about enjoining you from having access to and using your traits? They're their trade secrets. If we assume as we can now, since you won't pivoted away from talking about use, you want to talk about harm and relief. If we assume that you're using it and you then why isn't the injunctive relief pretty straightforward? You discourage all the information and you're prohibited from using it in any fashion. Well, Your Honor, we do think that it ties into the concept of use, and that is that Oakwood would have to allege and and be so that that usage would be would be prohibited. It is it is this stage. Hold on. I'm just I'm mystified. I'm gonna read you something from the from the district court's opinion. This is page seven of the district court's opinion, a seven in the appendix. Even had Oakwood sufficiently alleged the detriment a harm. The critical missing component is any allegation of precisely how defendants misappropriated plaintiff's trade secret. Where does that come from? Where is it? Anywhere in the federal rules of civil procedure and the Defend Trade Secrets Act or in the case law of this court that there has to be stated with precision how something was how a trade secret was stolen. Well, Your Honor, we would submit that that Oakwood doesn't need to allege precisely how the trade secret was stolen, but that it does have to allege that the usage and usage that would that would be a dent a detriment to that. And so that is the sort of linkage between the usage in specific ways. That is, and I think it's helpful to understand the trade secrets. That issue here are specific processes and formulations, right? They are. It is not Microsoft technology in general. It is specific Oakwood's specific formulations, Oakwood's specific processes that they've alleged that existed in 2014 when Dr. Thaneu. Okay, so you're accepting that they've you're accepting that they've identified the trade secrets at this point, right? And in fact, the district court acknowledged that they had done that, correct? The district court did adequately identify. Yeah, okay. So and and they've laid out in detail. These are the things that we we're saying were are stolen being used. Maybe I should just step back and let my colleagues take this because I'm still not fathoming how if if every reasonable inference is drawn in their favor, the allegation being made that they had nothing before and they're on a super fast track to development now does not imply use. Why does that not imply use? Certainly, Judge Jordan, we would take issue with the idea that there is that there is alleged super fast track here. Well, that's what they've said. I mean, I don't understand how you can take issue with it. They said it in print. They said they had nothing before or and now they're about to release something. It took us 20 years. They're doing it in a fraction, a small fraction of that time. So you can say they're wrong. But how can you say they haven't alleged it? Because they have, right? And to take to take the next step, even if even if they're the court were to credit Oakwood's allegation of a faster than expected development process, the court deficiency here, the thing that is lacking is that next step of connecting the usage of Oakwood's alleged trade secrets, which are fairly generalized, but and then supported by a couple of exhibits in the sealed in the sealed appendix, which I think if the court looks at them are fairly generalized and making and making the allegation that Oro Bindo is utilizing those specific trade secrets in a way in a specific way that is harming Oakwood. And we would contend, Your Honor, that that is the linkage that linkage to the usage to the unidentifiable usage that's like Mr. Shanno isn't isn't the harm merely the disclosure or use under the statute and the Defense of Trade Secrets Act, for example, provides for royalty as damages, right? It doesn't have to be actual losses. And if we're looking at sort of property understanding of trade secrets and a statute that says even the don't we have to recognize, too, that the use, for example, in development of the R&D, even if it doesn't ultimately produce a product, but the use would constitute with the other elements met a misappropriation. Well, the the allegations of disclosure here all are alleged to have occurred in 2014, when Oro Bindo and Oakwood discussed a potential joint venture about the sale of an API and active pharmaceutical ingredient from Oro Bindo to Oakwood, and in Dr. Thanew's then leaving Oakwood and moving to Oro Bindo. So the the alleged disclosure and Oakwood alleges in its complaint that that the disclosure was made then and that when Dr. Thanew arrived at Oro Bindo, he promptly began working on microsphere products using allegedly Oakwood's trade secrets information. So as alleged in the third amended complaint, as alleged on this complaint, the disclosure has already happened and the disclosure happened before the effective date of the DTSA. And and so that's right. So so so you're saying that the fact that it's already happened means it can't constitute harm that's compensable under the DTSA? What the what we're saying, Judge Jordan, is that because the disclosure has already happened, as this court held in, noted in the Campbell soup case, that once a disclosure has already occurred, the continuing disclosure is not the does not support a finding of harm of irreparable harm that could support an injunction. So the fact that the that that Oakwood has alleged that this disclosure has already been made that Oro Bindo is allegedly has this information doesn't support the finding. No, no, I think I understand them to be saying, you know, just it wasn't just the past disclosure. You're still using it. You're using it now and you're using it to their competitive disadvantage. And and someday when you show up in market, you will be in competition with them. Is that is that a bridge too far to say it's harm to them now, immediately today for you to be taking advantage of their trade secrets to develop a product that that constitutes a real harm. Now, whether or not there's product on the market or not, the very fact that you are accelerated in your development of a product constitutes a real continuing harm. You're saying that's not legally sound. Your Your Honor, we are saying that it is not the irreparable harm that is necessary for a court to issue an injunction. So that would be necessary for the court to show for the plaintiffs to show entitlement to relief now on this complaint. If if there was some allegation, so assume assume for the sake, assume for the sake argument that we believed everything they said. We accepted it all as we have to at this stage. Your legal position then is they have to wait until you complete your research and have a product ready for market and go to market, and then they could get an injunction. But they're powerless to stop you from the development of the product using stolen trade secrets. That's the legal position you've got. Not not exactly your honor. We think that the that the disclosure if the disclosure had not yet happened and there was some claim of inevitable disclosure and so the there was no sort of ongoing disclosure or use of that had already been disclosed that might and we disagree but that might be some kind of theory where you could prevent a disclosure from happening but once the disclosure has already been alleged disclosure apparently you know I've been and not in any unlawful way but some lawful disclosure by virtue of no no no no no you can't go you can't go there to not in some unlawful way we're taking their argument their argument and their allegation is you stole it you hired a guy and you hired him to steal it and he stole it and you're using it now that's the basis on which we're having this discussion we have to assume all that's true for the purpose of this argument we're having right now and your legal position is we can steal it and we can use it and you can't stop us because the disclosure happened back then it happened when we first brought him over so too bad we can keep using it and we can use it until we develop and release the product and you can't stop us but have I understood you correctly your honor respectfully the key point here is is the notion of irreparable harm that that in order to have an entitlement for a claim for relief now they the oakwood either needs to allege the facts that would support irreparable harm harm that cannot be remedied by damages or in some other way or they have to plead the economic damage is the basis for for relief for economic and your and your assertion your assertion is they can't print they can't argue irreparable harm because nothing's at market and and and of course if something worth of market I'd assume you'd say they can't argue irreparable harm because their damages and you're saying they can't argue damages because nothing's at market so they got nothing that's that's where you come out right your honor there wouldn't necessarily need to be some launch of the product there could be some more concrete indicia of of the product being launched whether that is regulatory approval or submission for regulatory approval or other other indicia that could support that kind of conclusion about advertising what about advertising that are there on the brink of the product precisely your honor that is the that is the type of allegation that could then provide some basis for a conclusion that there is irreparable harm that that this needs to be stopped now but the mere idea that someone how about an investor call how about an announcement to the market that they're on the verge of release respectfully your honor that is that that is not what the investor calls that is not the allegations here on this complaint and the investor calls that are exhibits that the statements and those calls are very general high-level sort of forward-looking we are trying to develop this product we are thinking of it and as the as remember that the this this case has developed over the course of many years and it's not as mr. Barry suggested that this is a two-year time frame this is now a time frame from dr. the new departing in 2014 to the third amendment in 2019 for these statements keep evolving keep changing and their concrete nature of an imminent launch there's no allegation okay what about the upcoming submission for FDA approval isn't that telling investors that this product is fairly far along its development certainly if there was an allegation that there was a submission for FDA approval which oakwood alleges would then trigger something like a 24 month time frame before there could potentially be approval that might be the kind of allegation that could get you closer to a finding of irreparable harm but here that oakwood has not made that allegation and the record does not support that kind of imminence indeed the record supports only that or a window has been trying without success to develop these products and despite its investor calls saying you know articulating with with some optimism that they are getting there it the actual facts as alleged show that it has been many many years of trial and error without success okay judge Krause or judge Restrepo anything else before we turn back to mr. Barry yeah okay thanks mr. Barry you've got three minutes for rebuttal thank you your honor I have three points number one we cited about a half dozen cases out of Delaware New Jersey in the Eastern District of Pennsylvania that says the claim does not need to make out specific allegations as to exactly how defendants used or disclosed plaintiffs trade secrets and the reason that is is because that information is solely within the defendants hand subject to discovery so there is no way for me to sit here and tell you exactly how dr. Thuneau and or bond used or Bindo used the confidential information but that would be fleshed out in discovery with respect to the use you have a hundred yard dash and they're starting from the 75 yard line I don't think the law is that you get an injunction only one to get to the 85 yard line and we don't even know how far along they are but we do know that if we look at the complaints at paragraph 77 a through D we talk about the financial calls we the transcripts as exhibits to the complaint and it says the next year they're going to be filing for FDA clinical trials that they're getting close to market it's all in the complaint there combine that with the fact that you remember this is not only a misappropriation of trade secrets case but we also have a breach of contract case for violation of that NDA that we signed at the very beginning of the party's relationship and so the lower court dismissed that breach of contract case because this is well you need to I you need to have the trade secret in order to have the misappropriation in order to have in order to have the contract claim but that contract specifically permitted injunctive relief as well and with respect to a point that Judge Krause had raised with respect to reasonable royalties we did plead that at a 243 so those are the only points that I wanted to make on rebuttal all right Thank You mr. Barry thank mr. Barry mr. for your arguments today we've got the matter under advisement